United States District Court
Southern District of Texas
**ENTERED**
September 22, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LUMMUS TECHNOLOGY, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:26-cv-2082 |
| | § | |
| INEOS US CHEMICALS COMPANY, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

**ORDER**

Pending before the Court is Plaintiff Lummus Technology, LLC's ("Lummus") Motion to Remand. (Doc. No. 6). After considering the motion, response, reply, and the law, the Court hereby **DENIES** Lummus's Motion to Remand.

## I. Background

Ineos and Lummus were the sole parties to a 2010 License Agreement that was intended to last for fifteen years.[1] (Doc. No. 7 ("Agreement") at 2). Under the Agreement, Ineos was required to license and disclose to Lummus "technical information and know-how relating to the production, separation, and recovery of paraxylene . . . ." (Agreement at 2). In exchange, Lummus agreed both to make an initial payment to Ineos and to make further royalty payments to Ineos from proceeds from sublicensing the information. (Agreement at 21).

Additional performance requirements under the Agreement included:

[1] The original agreement was between Lummus Technology, Inc. and BP Amoco Chemical Company. Lummus is the successor-in-interest to Lummus Technology, Inc., and Ineos is the successor to BP Amoco Chemical Company by acquisition. (Doc. No. 1-1 (Lummus' state-court petition) at 1).

(1) Clause 3.3 required Ineos to permit Lummus and its prospective licensees to visit Ineos's manufacturing facility in Belgium. (Agreement at 9).

(2) Clause 4.1 required Lummus to engage in "worldwide marketing" of sublicenses. (Agreement at 9).

(3) Appendix 1, paragraphs 1.3 and 2 required the parties to conduct "technology transfer" meetings at various locations, including the Ineos facilities in Naperville, Decatur, and Belgium. (Agreement at 52-53).

The Agreement also contained an arbitration clause, which provided in relevant part:

> All disputes arising in connection with or relating to provisions of this Agreement between the Parties . . . shall be settled and finally determined by arbitration. . . . Notwithstanding anything contrary in the foregoing, either Party, in its sole discretion, may opt out of the required mediation and/or arbitration of this Clause 22.7 to the extent any dispute arises out of the alleged breach or threatened breach of Clauses 3.1 [concerning Ineos's disclosure of technical information to Lummus] or 10 [concerning the confidentiality and limited use of information], in which case the dispute may be brought immediately before any court of competent jurisdiction.

(Agreement at 50-51). The parties agree that at least some of the Agreement's obligations survive the initial fifteen-year period of the Agreement. (*See* Agreement at 36-38). Which provisions survive, however, is disputed.

Lummus alleges that, following the initial fifteen-year term of the Agreement, Ineos refused to authorize one of its "Approved Catalyst Suppliers" to supply catalysts to Lummus, as required by Clause 6.5 and Clause 14.4(b) of the Agreement. (Doc. No. 1-1 at 9). Lummus also alleges that Ineos breached Clause 3.1 of the Agreement. (Doc. No. 1-1 at 10).

Lummus sued Ineos in the 281st District Court of Harris County, Texas, and Ineos removed to this Court. (Doc. No. 1). Ineos's Notice of Removal contends that this Court has subject matter jurisdiction based exclusively on the Convention on the Recognition and Enforcement of Foreign

Arbitral Awards ("the Convention"). Lummus then filed the present Motion to Remand, arguing that the Convention does not provide subject matter jurisdiction in this case.

## II. Legal Standard

Federal courts have limited jurisdiction, so any doubts as to whether federal jurisdiction is proper are resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Accordingly, the removing party bears the burden of establishing that a state-court suit is removable to federal court. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). When evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). Any doubts about the propriety of removal are to be resolved in favor of remand. *Acuna*, 200 F.3d at 339. "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. And Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

## III. Analysis

At issue is whether this Court has Jurisdiction based on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). The Convention is a multilateral treaty—that the United Staes acceded to in 1970—addressing international arbitration. *GE Energy Power Conv. France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438-39. Congress then enacted implementing legislation in Chapter 2 of the Federal Arbitration Act (FAA), specifically 9 U.S.C. §§ 201–208. *See id.* Section 205 of the FAA governs removal of cases filed in state courts, and states that:

> Where the subject matter of an action or proceeding pending in a State court **relates to an arbitration agreement or award falling under the Convention**, the

> defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205 (emphasis added).

Section 205 creates two jurisdictional requirements: (1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement. *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 909 (5th Cir. 2019).

**A. Whether the arbitration agreement "falls under" the Convention**

Whether an agreement or award falls under the Convention is governed by Section 202. That section states:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202.

The Fifth Circuit has held that an agreement falls under the Convention where: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). The presence of a non-United States party is not required in cases where there is "a 'reasonable relation' between the parties' commercial relationship and some 'important foreign element.'" *Id.* (quoting *Jones v. Sea Tow Servs., Inc.*, 30 F.3d 360, 366 (2d Cir. 1994)). The Court looks "not to the general relationship among the parties but to the

foreign character, if any, of the Agreement itself. *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 752 (5th Cir. 2020). The reasonable relation "must be akin to 'involv[ing] property located abroad' or 'envisag[ing] performance or enforcement abroad'—that is, the relationship must contemplate overseas action or involvement." *Id.* (quoting 9 U.S.C. § 202).

The parties do not dispute that the first three elements are satisfied here. With respect to the fourth element, the parties seem to assume, for jurisdictional purposes, that they are both American citizens and focus their briefing on whether the Agreement bears a reasonable relation to some important foreign element. *See id.* The Court is unable to determine whether Lummus is, in fact, an American citizen.[2] Nevertheless, as set out below, the Court finds that there is a reasonable relation between the parties' commercial relationship and an important foreign element. *See id.* As such, the Court has jurisdiction whether or not Lummus is an American citizen.

In *Freudensprung*, the court found that the agreement at issue "'envisage[d] performance abroad'—the performance of pipefitting services . . . in West Africa." *Id.* at 340–41 (quoting 9 U.S.C. § 202). The contract at issue was a "Personnel Supply Agreement" under which one of the defendants agreed to provide personnel to another for work to be performed in Africa. *Id.* at 332.

In *S&T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, the Fifth Circuit found the requisite foreign connection where the agreement was "executed in Guernsey and would by performed by [defendant] 'exclusively and wholly in and from Guernsey.'" 456 Fed. Appx. 481, 484 (5th Cir.

---

2 Lummus has described itself as an LLC, yet pled its citizenship as "a Delaware corporation, [with] its headquarters . . . in Houston, Texas," and its principal place of business in Houston, Texas. (Doc. No. 1–1 at 3). It is axiomatic that "the citizenship of an LLC is determined by the citizenship of all of its members." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019). Lummus has not provided the Court with this information.

2012). The court there also found that the agreement involved foreign property because it stated that plaintiff "was to provide its interest in a Romanian joint stock company as collateral . . . ." *Id.*

In *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, the subject arbitration agreement was contained in a confidentiality agreement signed in relation to a private bidding process for the sale of three oil mining leases in Nigeria. 866 F.3d 709, 710 (5th Cir. 2017). In that case, the Fifth Circuit held that Convention jurisdiction existed because the disputed transaction—the purchase of the oil leases—"and related written arbitration provisions involve property located abroad and envisage performance abroad—the leases were for sale in Nigeria and all performance was to occur in Nigeria." *Id.* at 713.

Finally, in *Soaring Wind*, the Fifth Circuit considered an agreement that created an LLC. *Soaring Wind*, 946 F.3d at 753. The court there instructed that "[o]ur analysis of the Agreement's relation to a foreign state does not . . . end at the four corners of the contract." *Id.* Even though "the Agreement appear[ed] to evince a domestic character," the Fifth Circuit found that:

(1) A party would be in breach of the agreement should its affiliate engage in certain activities;
(2) Both parties "were well aware that" the affiliates of the defendant included a variety of Chinese entities; and
(3) A Chinese entity's actions on foreign soil could trigger breach for a domestic party;

The Fifth Circuit held that "[s]uch factors are enough for the Agreement to bear a relation to China sufficient for federal jurisdiction under [the Convention]." *Id.* The Fifth Circuit also stated that "[i]t might be enough if an agreement call[ed] for meetings to be held in a foreign country . . . ." *Id.* (citation modified).

In the instant case, the Agreement envisages some performance abroad. Lummus's principal obligations under the Agreement were (1) to pay, and (2) to secure sublicensing through "worldwide marketing." *Soaring Wind* makes clear that this, alone, would not be sufficient. *See id.*

That being said, Ineos's principal obligation under the Agreement was to license and disclose to Lummus "technical information and know-how relating to the production, separation, and recovery of paraxylene . . . ." (Agreement at 2). According to Appendix 1 to the Agreement, (Agreement at 52-55), this "technology transfer" was to occur at least in part at Ineos facilities in the United States. (Agreement at 52, 54-55). Other aspects of the transfer were to occur at Ineos's facility in Belgium. (Agreement at 53). The Agreement explicitly "calls for meetings to be held in a foreign country." *Soaring Wind*, 946 F.3d at 753. Additionally, it is undisputed that "all parties understood and anticipated that all of Lummus's licensees would be located in foreign countries." (Doc. No. 12 (Declaration of Craig Colling) at 1; *See also* Doc. No. 18 (Declaration of Wei Zhu) at 4). These factors—taken together—are enough for the Agreement to bear a relation to a foreign country sufficient for federal jurisdiction under the Convention.

Since the Agreement "falls under" the Convention under Fifth Circuit law, this Court must now determine whether the subject matter of the action "relates to" the arbitration agreement.

**B. Whether the subject matter of the action "relates to" the arbitration agreement**

The Fifth Circuit has held that "whenever an arbitration agreement falling under the convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' to [sic] the plaintiff's suit." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (emphasis in original). Indeed, "the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." *Id.* "As long as the defendant's assertion is not completely absurd or impossible, it as at least conceivable that the arbitration clause will impact the disposition of the case." *Id.*

Lummus argues that, because it is suing for a breach of Clause 3.1 of the Agreement, this dispute is categorically not arbitrable. (Doc. No. 6 at 7). This is because, Lummus urges, Clause

22.7 of the Agreement permits either party to opt out of arbitration "to the extent any dispute arises out of an alleged breach or threatened breach of Clause[] 3.1." (Doc. No. 6 at 14 (quoting Agreement at 50)). Lummus is also suing, however, for a breach of Clauses 6.5 and 14.4(b). (Doc. No. 1-1 at 9). Neither of these clauses is excluded from arbitration in Clause 22.7. (Agreement at 50). Ineos's assertion that Lummus agreed to arbitrate its claims is neither completely absurd nor impossible. *See Beiser*, 284 F.3d at 669. As such, the arbitration agreement could conceivably affect the outcome of plaintiff's case. *See id.*

## IV. Conclusion

For the foregoing reasons, the Court finds that it has subject matter jurisdiction under 9 U.S.C. § 205. Lummus's Motion to Remand, (Doc. No. 5), is **DENIED**.

It is so ordered.

Signed on this the 22nd day of September 2026.

Andrew S. Hanen
United States District Judge